1 | JOSEPH A. YANNY, ESQ., SBN 97979
2 | jyanny@yannylaw.com
  | KIM D. ASHLEY, ESQ., SBN 253160
3 | kashley@yannylaw.com
4 | AARON A. KUPCHELLA, ESQ., SBN 286336
  | akupchella@yannylaw.com
5 | YANNY & SMITH
6 | 1801 Century Park East, Suite 2400
  | Los Angeles, California  90067
7 | Telephone: (310) 551-2966
8 | Facsimile: (310) 551-1949
9 | Attorneys for Mongol Nation.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| United States of America, | CASE NO.: CR-13-106-ODW |
|---|---|
| Plaintiff, | **MOTION FOR DISQUALIFICATION OF HON. OTIS WRIGHT, II.** |
| v. | |
| Mongol Nation, | |
| Defendants. | |

**PLEASE TAKE NOTICE** that Mongols Nation Motorcycle Club, LLC ("Movant"), by and through counsel, will and hereby does move for disqualification of Honorable Otis Wright II and random assignment of the above-captioned case to a different judge in the Western Division of the Central Division, pursuant to 28 U.S.C. § 144 and/or 28 U.S.C. § 455. General Order 08-05 § 10.0 requires that this motion be

1  assigned to a different judge.[1] Movant also requests that the Court order the Clerk's

2  office to produce all records pertaining to this case's assignment to Judge Wright,

3

4  which should have been preserved pursuant to General Order 08-05 § 8.1.2.[2] Finally,

5  Movant requests that the Court to whom this motion is assigned set a hearing so that

6

7  the parties may present oral argument and inspect the requested documents. This

8  motion shall be based on the motion, this notice of motion, the attached memorandum

9  of points and authorities, affidavits submitted herewith, all filings and oral records,

10

11  and upon any and all argument heard by the Court on the motion.

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26  [1] "If a motion is made to disqualify a judge in any criminal case, the motion shall be referred to the Clerk for random assignment to another judge."

27  [2] Section 8.1.2 reads ("Records pertaining to all case assignments shall be preserved for two years after the end of the calendar year in which the assignments were made")

28

MOTION FOR DISQUALIFICATION

# I.
## INTRODUCTION

Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify himself in any proceeding in which his impartiality *might reasonably be questioned*." (emphasis supplied). Mongols Nation Motorcycle Club, LLC ("Movant") respectfully submits that comments, which have been memorialized in the public record, unquestionably display Judge Wright's bias against the sole defendant in this case, the Mongols Nation Motorcycle Club, which bias was formed before properly receiving one shred of evidence in this case, regarding this defendant, as a consequence of Judge Wright's prior exposure to the charges, proceedings and the voluntary <u>guilty pleas</u> of forty separate criminal defendants in a previous matter over which he presided, entitled *US v. Cavazos*, Case No. 08-1201-ODW. Those plea agreements are currently under seal, and this Defendant was not afforded the niceties of Due Process in those prior proceedings.

For litigation estoppel to apply, this Defendant must of necessity have been before the prior Court, and the matters must have been <u>fully and fairly litigated</u>. *Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 US 313 (1971). Where prior proceedings lacked general fairness and completeness and where stipulations were arrived at as a matter of expediency, there can be no preclusive effect on a separate defendant's right to relitigate the issues stipulated to as a matter of convenience to others. Although this Defendant has never been before this Court in

MOTION FOR DISQUALIFICATION

trial, Judge Wright's comments suggest that he has already found the Movant guilty of the most critical of ultimate facts regarding culpability, by virtue of a presumed association with individuals who pled guilty in the *Cavazos* case.  Additionally, Judge Wright has already pronounced sentence with respect to this Defendant's property rights without properly receiving on shred of evidence in the penalty of a case involving this Defendant. "Regrettably," and with all due respect to Judge Wright, Movant submits that any reasonable Citizen would conclude that Movant cannot possibly obtain a fair trial in the instant case unless Judge Wright is recused from this case. Indeed, given the persistence of Judge Wright's obvious bias against the Mongols that is now reflected in the public record, recusal is not only required by statute, but it is necessary to ensure public confidence in the Judicial System.

## II.
## BACKGROUND

As Judge Wright has stated on the record in this case, his unwavering opinions about Movant are at least in part based on the pleas of about forty presumed former members of the Mongols Motorcycle Club, which were entered before him in *US v. Cavazos*, Case No. 08-1201-ODW. *See* Ex. B, p. 13:4-12. This related case was assigned to Judges Wright and David O. Carter who each assumed half of the individual defendants, after the unfortunate death of Judge Florence Marie Cooper to whom the entire case had originally been assigned. The government's Notice of Related Case, which was filed simultaneously with the indictment in this case (*See*

4
MOTION FOR DISQUALIFICATION

Doc. No. 5), mistakenly lists Wright alone as the primary judge assigned to the related *Cavazos* case, instead of Judges Wright and Carter who each inherited half of the case simultaneously. *See* Ex. E.[3]

The Government's obvious desire to steer the matter to Judge Wright is understandable, given Judge Carter's sanctioning of the Government in the amount of $253,206.78 in a related civil action, involving the Government's abuse of process in the forfeiture of paraphernalia bearing the same trademark at issue in this case. *See Rivera v. Carter et al.*, CV-09-2435-DOC-JC, Doc No. 113 (Ex. D). Only after Judge Carter granted summary judgment in favor of Rivera, a non-indicted member in the prior proceedings whose civil rights had been violated by the actions of the Government in the *Cavazos* case, did Judge Wright "regrettably" vacate the preliminary forfeiture order, which was violative of the civil rights of various members of the Club and attempted to, in effect, confiscate the trademarks of this Defendant who had never appeared in front of Judge Wright. *See Rivera*, Doc. No. 90 (Ex. C). "Regrettably," Judge Wright has a long history of disregarding the civil rights of this Defendant and its members including the right to a full and fair trial and an impartial Judiciary before finding criminal culpability and passing sentence.

In *Cavazos*, the holder of the Mongols' collective membership mark filed a third party ancillary petition objecting to the Government's previous and unsuccessful

---

[3] Movant's counsel has since filed a more precise Notice of Related Case listing both Judges as *Cavazos* assignees.

MOTION FOR DISQUALIFICATION

attempt to gain forfeiture of the Mongols' collective membership mark. At the conclusion of the case, Judge Wright issued a *Final Order Vacating the Preliminary Order of Forfeiture Re: Trademarks* (*See* Ex. A) (an order which Judge Wright himself had entered, which was violative of the rights of the Defendant in the instant case) granting the ancillary petition, but not until many months had already passed in which the rights of association of the members of the Mongols Nation Motorcycle Club had been violated and the property rights of the Club itself had been ignored.

However, Judge Wright made no secret of his disappointment at having to rule in favor of the Mongols Motorcycle Club in that regard. *See* Ex. A, 7:13-15 ("Stated as succinctly as possible, the court regrettably must conclude that it must grant the petition to Vacate or Amend the Preliminary Order of Forfeiture for the following reasons") (emphasis added).

By itself, this admission of disappointment in needing to rule in favor of the Mongols Motorcycle Club may not have been sufficient to support Judge Wright's disqualification at the outset of this case. However, on October 21, 2013, it became eminently clear that Judge Wright had already pre-judged the ultimate facts of the instant criminal case regarding a defendant that had yet to appear before him at trial, present any evidence or cross examine even one witness.[4] He was willing to do this

---

[4] Although some bias was evident at the outset of this case, this motion is timely filed because the grounds for Judge Wright's disqualification did not become clear until the October 21, 2013 hearing. *In Re Martinez-Catala*, 129 F3d 213, 221 (1st Cir. 1997) (Holding that the factual basis for recusal may be cumulative). Subsequent to appearing in this case, Movant's new counsel filed this motion

MOTION FOR DISQUALIFICATION

based solely on consent decrees entered against other separate and distinct defendants who had not fully and fairly litigated their matters, but had opted—for whatever expediency—to take pleas. The record establishes that Judge Wright appears to be willing to find this separate and distinct criminal defendant guilty of being "a criminal enterprise" by a presumption of guilt by association—an impermissible leap of logic.

Prior to hearing any evidence regarding the defendant in <u>this</u> case, which the Government describes as an "unincorporated association" allegedly consisting of every "full-patched" member of the Club, Judge Wright explained his view of the link between this collective/organizational defendant and the plea bargains of forty individual alleged <u>former</u> members of the Mongols Motorcycle Club. First, the Court stated that, because of what those alleged former members pled guilty to in Judge Wright's courtroom, the Club's internal rules prohibiting illegal conduct among members are "laughable." Ex. B, 12:20 – 13:10. The Court then stated:

> Those bylaws are a joke, and you know it. I am surprised you even mentioned it. This is a criminal enterprise as evidenced by the admissions of same by no fewer than 40 people who appeared before me. I can't speak to the other 40 who appeared before Judge Carter. This is a dangerous enterprise.

*Id.* at 13:9-14.  Judge Wright reached this conclusion without hearing evidence from even one of the over seven hundred plus other members worldwide, the ranks of

---

promptly after securing a necessary continuance of trial (which was granted on January 30, 2014) and completing a thorough investigation of the facts and law related to this motion in this complex criminal case.

MOTION FOR DISQUALIFICATION

which, include doctors, lawyers, professionals of all sorts, business owners, and loyal

employees of others, many or most of whom hail from the ranks of those who proudly

call themselves former members of the US armed forces.

In response to counsel's assertion that the Mongols Motorcycle Club is not a

criminal enterprise, the Court stated:

> . . . you are saying that it is no different than them having
> perhaps having been Lutheran and they are of doing all these
> criminal things and it is just coincidental that some of them
> were Lutheran; right?  It is not the same thing, is it? They are
> operating under the banner of the Mongols. It is that name, that
> reputation, that intimidation factor which enables them to do
> what they do, isn't it?
> MR. BERNSTEIN: I can't –
> THE COURT:  Go like that.
> MR. BERNSTEIN: I can't answer that, your Honor.
> THE COURT: I can. I have seen them. All right. They have all
> been here. I have seen them. And that is why they are fighting
> so hard to hang on to those colors. Those colors mean
> something. . . .

*Id.* at 15:9-23. However, Judge Wright has not seen the other seven hundred plus

members. Rather, he has seen the voluntary and expedient guilty pleas of about

forty individuals, who are presumed to have been affiliated with this Defendant in

such a fashion as to confer culpability upon this Defendant in prior proceedings in

which this Defendant was never afforded the niceties of Due Process. The

evidence at a full and fair trial would establish that many of those previously

indicted individuals were no longer members at the time of their indictments,

arraignments, and/or convictions based on voluntary plea agreements.

MOTION FOR DISQUALIFICATION

The transcript also establishes that before any evidence has been presented, Judge Wright is convinced that the Government has corrected the infirmities of its prior pleadings and conduct (which resulted in over $250,000 in sanctions), which "regrettably" prevented the forfeiture of the marks in the *Cavazos* case. Ex. B. 9:16-18 ("If the association is convicted, relinquishment or forfeiture of those marks <u>will</u> be part of the sentence") (emphasis added) (an interest sentence, given that not one shred of evidence or argument has been presented in a penalty phase of a criminal trial against this Defendant). Ex. B. 11:18-22 ("THE COURT: . . . If that organization is convicted, its interest in those marks is forfeitable to the government; right? MR. BERNSTEIN: I don't agree. That is the rub. THE COURT: You lose."). *See also* Ex. B, 14:12-21. Judge Wright was "regrettably" willing to reach these conclusions without properly receiving one shred of evidence in a penalty phase of any trial, or argument of counsel, in which this Defendant was afforded the niceties of Due Process, and *that* is the rub.

**III.**
**DISCUSSION**

**A.    <u>Disqualification Is Mandatory Where a Judge's Impartiality Might Reasonably Be Questioned And All Doubts Must Be Resolved in Favor of Disqualification.</u>**

Although Movant respectfully submits that the order and transcript submitted with this motion evidence *actual* bias and prejudice sufficient to require

9

disqualification under 28 U.S.C. § 455(b) and/or 28 U.S.C. § 144,[5] no such finding is required for recusal. If public confidence in the judiciary is to be preserved, "[w]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify himself in any proceeding in which his impartiality *might reasonably be questioned*." (emphasis supplied). "Scienter is not an element of a violation of § 455(a)." *Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847, 859 (1988) (quotation marks omitted).

In *Liteky*, the Supreme Court held that 455(a) recusal does not require that the source of a judge's actual or apparent bias be "extrajudicial."[6] *Liteky,* 510 U.S. at 554-55. The Court held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," constitute grounds for recusal where they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. at 555.

Section 455(a) is an objective standard that "involves ascertaining whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Preston v. United States*, 923 F.2d 731, 734 (9th Cir.  1991) (quotation marks omitted). In performing this analysis, the Court

---

[5] The standard for actual bias or prejudice under both of these statutes is the same. *See U.S. v. Conforte*, 624 F2d 869, 880 (9th Cir. 1980).

[6] The Court held that the so-called "extrajudicial source doctrine" is better thought of as a factor, *Liteky,* 510 U.S. at 554-55, because "an allegation concerning some extrajudicial matter is neither a necessary nor a sufficient condition for disqualification under any of the recusal statutes." *Id*. at 561.

MOTION FOR DISQUALIFICATION

"must bear in mind that . . . outside observers are less inclined to credit judges'

impartiality and mental discipline than the judiciary itself will be." *US v. Holland*, 519

F3d 909, 914 (9th Cir. 2008) (quotation marks and citation omitted) "If it is a close

case, the <u>balance tips in favor of recusal</u>." *Id.,* at 912 (emphasis added). *See also NYC*

*Housing Develop. Corp v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986); *In re Chevron*

*U.S.A., Inc.*, 121 F3d 163, 165 (5th Cir. 1997).

> **B.** **<u>Disqualification is Required In This Case Because Judge Wright Has Displayed Bias and Deep-Seated Antagonism Towards Movant, Has Previously Acted in an Unconstitutional Fashion with Respect to This Defendant's Property Rights and Has Pre-Judged Factual and Legal Issues Regarding a Defendant Who Has Never Appeared Before Him in Trial.</u>**

Although Judge Wright is entitled to have opinions on matters before him, any

reasonable observer that is aware of Judge Wright's "regret" in previously ruling in

favor of the Mongols Nation Motorcycle Club trademark holders, by dissolving his

prior unconstitutional *Preliminary Order of Forfeiture*, and who subsequently

witnessed or read Judge Wright's comments at the October 21, 2013 hearing can

clearly discern a deep-seated antagonism against the Movant. This antagonism is

apparently based entirely on having witnessed the charges, proceedings, and voluntary

and expedient guilty pleas of about forty individuals, who are presumed to have been

affiliated with this Defendant in such a fashion as to confer culpability upon this

Defendant in prior proceedings in which this Defendant was never afforded the

niceties of Due Process.

MOTION FOR DISQUALIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before hearing any evidence at trial about the Defendant in this case, Judge Wright has already decided the ultimate fact of culpability. *See* Ex. B, 13:9-14 ("This is a criminal enterprise as evidenced by the admissions of same by no fewer than 40 people who appeared before me. . . . This is a dangerous enterprise."). In short, Judge Wright has already found the Movant guilty by association, without having properly received one shred of evidence.

Judge Wright has also already concluded that the marks are forfeitable and that forfeiture will necessarily follow a conviction—again, without receiving one shred of evidence or argument of counsel in a fully and fairly litigated trial. The transcript, taken as a whole, reveals that forfeiture is a foregone conclusion in Judge Wright's mind. *Id*., 9:16-18 ("If the association is convicted, relinquishment or forfeiture of those marks <u>will</u> be part of the sentence") (emphasis added) *Id*. 11:18-22 ("THE COURT: . . . If that organization is convicted, its interest in those marks is forfeitable to the government; right? MR. BERNSTEIN: I don't agree. That is the rub. THE COURT: You lose.").

Not only is this finding premature, but it glosses over the novelty of the Government's theory. There is simply no precedent for the forfeiture of collective membership marks—the rights to which arise from the use by, and inure to the benefit of, unindicted individuals—even if legal title is held by an entity in trust for the members. The forfeiture that Judge Wright and the government are contemplating

12
MOTION FOR DISQUALIFICATION

implicates both fundamental First Amendment rights of association and free speech as well as established principles of trademark law such as the invalidity of assignments *in gross*. Despite these numerous issues of first impression, Judge Wright has already pronounced this first-of-its-kind sentence before hearing any evidence at all in a fully and fairly litigated trial.

The Judge's use of the word "regrettably" and his reaching of a series of ultimate conclusions in the hearing transcripts signal the attitude of Judge Wright as well as his desire that the Defendant, who has never been before him at trial, be found guilty and punished. As striking as the statements that suggest bias and partiality is the absence of comments or statements that indicate Judge Wright's ability to look at Movant from an impartial and objective perspective.

Based on the deep-seated antagonism Judge Wright developed from whatever source, he has demonstrated that he is not capable of looking at this Defendant objectively and dispassionately. Additionally, if plea bargains from a previous case not involving this Defendant are potential evidence in this case, Judge Wright will improperly be in the position of both witness and judge in a matter. It is axiomatic that where litigation estoppel is an issue, the avenues of attack are non-identity of the parties (which does not seem to matter to Judge Wright) and that the prior proceedings lacked basic fairness and Due Process. *Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 US 313 (1971). Judge Wright would be in the

MOTION FOR DISQUALIFICATION

improper position of adjudicating the propriety of his prior rulings when entering the pleas and the basic fairness of the proceedings before him.

For all of these reasons, Movant submits that the Prosecution should be joining in this motion given their obligation to see to it that the innocent walk free, the accused get a fair trial, and the public does not lose faith in the system. *Berger v. U.S.*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). However, during meet and confer with the Government regarding this motion, the Government indicated that it was unwilling to stipulate to the propriety of this motion.

### C.    The Court Should Order the Clerk's Office to Produce the Judicial Assignment Records

Given the Government's erroneous *Notice To Court of Related Criminal Case*, which appears to list Judge Wright as the only judge to whom *Cavazos* was assigned instead of prominently listing both Judge Wright <u>and</u> Judge Carter as having simultaneously being assigned equal portions of the case, and given the improbability that this case was <u>also</u> "randomly" assigned to Judge Wright, without reference to the Notice of Related Case, the Court should order the Clerk's office to produce all records pertaining to this case's assignment to Judge Wright, including but not limited to all Automated Case Assignment System (ACAS) records. Although such records

14
MOTION FOR DISQUALIFICATION

are not generally made public, General Order 08-05 § 8.1.2 calls for their preservation,[7] and their production to the Court and inspection by the parties will help to ensure public confidence in the propriety of the assignment procedures of this case, given the presence of the Government's Notice of Related Case in the record at the time of assignment.

### III.
### CONCLUSION

For the foregoing reasons, Movant respectfully requests that this motion be set for hearing, that Judge Wright be disqualified and that this case be randomly assigned to another Judge in the Western Division of the Central District of California and/or that the Clerk prepare a proposed transfer order to be presented to Judge David O. Carter pursuant to Section 11.2 of General Order 08-05. Movant also respectfully requests that all records pertaining to this case's assignment to Judge Wright, including but not limited to Automated Case Assignment System (ACAS) records, be produced for inspection by the parties at the time of the hearing on this matter.

Dated: February 14, 2014          Respectfully submitted,
                                  YANNY & SMITH

                                  /s/ Joseph A. Yanny____
                                  Joseph A. Yanny
                                  Attorney for Mongols Nation Motorcycle Club, LLC

---

[7] Section 8.1.2 reads ("Records pertaining to all case assignments shall be preserved for two years after the end of the calendar year in which the assignments were made")

15
MOTION FOR DISQUALIFICATION